STATE of Tennessee, Appellant,

v.

Henry C. HARMON, Jr., Appellee.

Supreme Court of Tennessee,
at Knoxville.

July 3, 1989.

W.J. Michael Cody, Atty. Gen. & Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, Lynn W. Brown, Asst. Dist. Atty. Gen., Elizabethton, for appellant.

Mark S. Dugger, Dugger & Cole, Elizabethton, Donald E. Dawson, Paul J. Morrow, Jr., Amicus Committee T.A.C.D.L., Nashville, for appellee.

OPINION

O'BRIEN, Justice.

Defendant was indicted for breaking and entering into an automobile and for grand larceny. A pretrial motion to suppress evidence was filed charging that the evidence was obtained through an unlawful search and seized in violation of the defendant's federal and state constitutional rights. At the conclusion of the suppression hearing the trial judge denied the motion to suppress without an explicit ruling on the validity of the search. He ruled that suspected items taken from the defendant's person could be temporarily held until it could be determined whether or not they were stolen property.

Subsequently, the defendant submitted a guilty plea to a charge of petit larceny with the specific intent to reserve the right to appeal a certified question of law dispositive of the case, in accordance with the requirements of Tenn.R.Crim.P. 37(b)(2)(i). The attorney general agreed to the terms of

the submission and that the question to be certified would be dispositive of the case. The breaking and entering charge in the indictment was to be dismissed. The judgment form finding the defendant guilty of petit larceny contains the notation made by the trial judge "under Tennessee Rules of Procedure 37(b)." Subsequently an order was entered stating in pertinent part that the State stipulated this to be a proper case for appeal on the issue of whether evidence taken from defendant's person should be suppressed as a violation of his rights under the Constitution of the United States and the State of Tennessee and that said issue would be dispositive. The trial judge certified that this was a proper issue for an appeal and would be dispositive of the case, reserving final disposition on the guilty plea until the issue was ruled upon by the appellate court.

The issue presented to the Court of Criminal Appeals was "whether items of personal property taken without probable cause from the defendant and detained for several days violated the defendant's rights under the Fourth Amendment to the United States Constitution and Article 1, § 7 of the Constitution of the State of Tennessee."

To summarize the evidence at the suppression hearing, it was the testimony of Patrolman Mark Musick, of the Elizabethton Police Department, that sometime after 1:00 a.m. on 21 August 1986 he was on patrol and observed a car parked at a local ball park, adjacent to two business places known as Howard's Shop E–Z and Maupin Exxon. He knew the car belonged to the defendant, and that he had a criminal record for larceny. He approached the vehicle and found a woman named Cindy Crowe, whom he also knew, and an infant inside. Upon inquiry she told him they had run out of gas and that defendant and a third person, named David Harrell, had walked to Dave's Oil Company to get gas. The officer walked to the gas station and learned from the attendants on duty that no one had been there all night to get gas. He observed the car from a distance for a short time, then radioed police headquarters for assistance. He then drove around behind the business places where he observed the defendant coming out from a wooded area. He was wearing dark clothing. His pants pockets were bulging and the officer suspected he might be carrying a weapon or had contraband of some kind. He patted him down and frisked him, taking from him a pair of wire cutters, a small electronic device, which defendant said was a noise eliminator from the stereo in his car, and a gospel music cassette tape. This officer's recollection was that defendant told him the articles were his, that he found them in the woods.

Police Captain Tom Bowers arrived on the scene about that time. They asked defendant if he would go with them to show where he had detached the electronic device from his car and defendant agreed. The car had been moved to the vicinity of a local restaurant. When they arrived there defendant's companion, Miss Crowe, advised him that he did not have to show the police anything and he declined to show the officers where he had detached the device from his vehicle. Captain Bowers generally confirmed Officer Musick's testimony and added that he took the items found on defendant into his possession, telling him to give them a couple of days to check on them. Defendant was further informed that if they found the articles were not stolen he could come by the police department and they would be returned to him. He never sought recovery of the items taken from him.

The affidavit to the warrant for defendant's arrest reiterated the foregoing testimony. It contained the further allegation that defendant told them he found the cassette tape at another location, he had taken the electronic device out of his vehicle and the wire cutters were just in his pocket. A search was made that night in the general area where defendant was found and no evidence of a break-in was evident. On 28 August 1986 Brian Lowe came to police headquarters and reported the larceny of a car stereo from his vehicle which was stored behind Maupin Exxon. The vehicle had been there since 15 August 1986. Mr.

Lowe identified the items taken from defendant as coming from his vehicle.

Based on this evidence the intermediate appellate court found the seizure of the involved property violated the Fourth Amendment and reversed the suppression hearing judgment, dismissing the case. The lower court found the officer's suspicion that the property was stolen was based solely upon his knowledge of the defendant's prior record of larceny. They also found the investigation did not demonstrate any crime had occurred in the area. They opined that defendant's record warranted his being stopped but did not create a sufficiently well-founded suspicion of crime to justify the seizure of the articles found on his person. They held the property seized was not generally contraband, or evidence of a crime, and the police had no probable cause or articulable suspicion that a crime had been or was being committed prior to or at the time of the seizure. They concluded that under the circumstances, the retention of the articles taken from him was not supported by cause or exigent circumstances sufficient to render the seizure reasonable on Fourth Amendment grounds.

In ruling on the State's argument that defendant did not have standing to complain of the seizure of these goods because he did not testify at the suppression hearing that the property belonged to him, they expressed the opinion that the stop and frisk was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) but, that a citizen whose person had been searched and from whom apparently innocent property has been seized, without a warrant, was not required to testify and assert ownership of the property to prevail on a Fourth Amendment attack upon the action of the police. We disagree with that analysis. The circumstances of defendant's apprehension, as related previously herein, were sufficient not only to warrant further investigation, but also the seizure and detention of the items taken from the defendant, which included a pair of wire cutters.

The only issue raised by the State's appeal from the Court of Criminal Appeals decision is, whether or not that court erred in holding the defendant had standing to challenge the seizure of items shown to be stolen from another. The defendant couches the issue in different language, insisting that it is whether the Court of Criminal Appeals erred in holding that the defendant had standing to challenge the illegal seizure of items taken from his person.

It appears to us that the case may not be in the proper posture for appellate review. The trial court never ruled directly on this issue, nor was it the issue certified as dispositive of the case under Tenn.R.Crim.P. 37(b)(2)(i). At the initiation of the hearing on the motion to suppress the State argued the defendant did not have standing to object to the admission of the items seized into evidence because they did not belong to him. Their insistence was that the burden was upon him to prove standing. Defense counsel argued to the contrary, that the burden of proof was upon the State because the articles he wished to suppress were taken from defendant's person. Presumably, the trial judge ruled with the defense when he required the State to proceed first with its proof.

■ As a practical matter this might be considered a non-issue insofar as the question of production of evidence at a suppression hearing is concerned. We have not been directed to any case specifically on point by either the State or the defense. The United States Supreme Court has noted that the interests at stake in a suppression hearing are of a lesser magnitude that those in the criminal trial itself. *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980). It is more in the nature of an informal proceeding and the general consensus is that the burden of proof rests upon the party who has the affirmative. In a case such as this, where the police conduct a warrantless search, the burden is upon the public prosecutor, to show the circumstances met the Fourth Amendment proscription against unreasonable searches and seizures. Until that has been accomplished to the satisfac-

tion of the hearing judge the defendant is not required to establish he has standing to object to the search. In this case it is a matter of little significance at this stage of the proceedings. The defendant has never attacked the validity of the stop and frisk search of his person. He has limited the issue to the legality of the seizure of the items taken from him. In the Court of Criminal Appeals he restricted his argument to the fact that the police had kept the articles taken from him for more than a week, which he says constituted an unlawful seizure. Indeed, in the light of the circumstances related at the suppression hearing, there would be no merit to an objection to the search. The officer approached defendant's vehicle in the early morning hours, parked near a ball park adjacent to two business places. He recognized the vehicle as one owned by defendant and had personal knowledge that he had a record for larceny. The occupant of the vehicle lied to him about defendant's whereabouts. While searching the area he observed defendant coming out of the woods behind one of the business establishments. He was wearing dark clothing and his pants pockets were bulging. Under the circumstances it could hardly be said the officer did not have probable cause to stop and frisk defendant under the authority of *Terry v. Ohio,* supra.

On the other hand, the State limits its argument here to the issue of defendant's standing to challenge the seizure of the items taken from his person. At the suppression hearing his argument was based on the search and the seizure and that is the issue upon which the trial court ruled.

■ In *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the United States Supreme Court held that officers were justified in temporarily seizing personal effects from a person where there was a reasonable suspicion to believe the effects contained contraband or *evidence of crimes.* (Emphasis ours.) The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends on all the circumstances surrounding the search or sei-

zure and the nature of the search or seizure itself.... The permissibility of a particular law enforcement practice is judged by "balancing its intrusion on the individual's Fourth Amendment interest against its promotion of legitimate governmental interests." See *United States v. Montoya De Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 3308, 87 L.Ed.2d 381 (1985). (Citations omitted).

In this case, at an early hour in the morning, with adequate indicia of criminal activity, the officers confiscated the three items taken from defendant in order to further their investigation. They advised him if they found out they were not stolen they would be returned to him in a day or two. We do not think this reasonable detention of the evidence taken from defendant's person violated his rights under the Constitution of either the United States or the State of Tennessee.

■ However, there is a further reason why the seizure and detention of these articles are not dispositive of this case. Assuming, arguendo, that the seizure and detention of the articles taken from defendant amounted to a violation of his constitutional rights, the Fourth Amendment does not require suppression of evidence initially taken by illegal means where there is a subsequent independent source for its admission untainted by the initial illegality. See *Murray v. United States,* —— U.S. ——, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In *Murray,* 108 S.Ct. at page 2533, citing from *Nix v. Williams,* 467 U.S. 431, 433, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), the Court described that doctrine as follows:

"[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse,* position that they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than

they would have been in absent any error or violation."

There was such an intervention in this case when Mr. Brian Lowe came to police headquarters and reported the larceny of his car stereo and identified the articles taken from defendant as having been stolen from his vehicle. Upon the occurrence of that event the police had sufficient information upon which to arrest and charge the defendant regardless of whether or not they had seized and retained the items taken from him. It matters not that Lowe identified the objects first hand, a mere description from him would have alerted the recollection of the police to the fact and circumstances of defendant's possession of them.

We have been benefited by an Amicus brief submitted by the Tennessee Association of Criminal Defense Lawyers. Persuasive argument is made in favor of the standing of defendant to object to the search and seizure in this case. We are urged to confer greater protection under Article 1, Section 7 of the Tennessee Constitution than that afforded by the Fourth Amendment. Under the view we have taken of the matter, such action would not be appropriate under the circumstances of the case.

The judgment of the Court of Criminal Appeals is reversed. The case is remanded to the trial court for such other and further proceedings as may be appropriate.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.

ORDER ON PETITION TO REHEAR

The State has filed a petition to rehear asserting that certain language in the Court's opinion appears to require the public prosecutor to establish the legality of a challenged search prior to the defendant's demonstration of standing and conflicts with precedent. In referring to a search of defendant's person the Court said:

In a case such as this, where the police conduct a warrantless search, the burden is upon the public prosecutor, to show the circumstances met the Fourth Amendment proscription against unreasonable searches and seizures. Until that has been accomplished to the satisfaction of the hearing judge the defendant is not required to establish he has standing to object to the search.

In order to object to the admission of illegally seized evidence, the defendant must show that he has some interest in the property seized, or the premises searched, or *at least his right of privacy has been involved.*

A search of one's person is such an incipient invasion of the right of privacy that it is difficult to perceive why the State would raise the issue of the burden of proof on a motion to suppress, as occurred in this case. The authority offered by the State does not support the petition under the factual situation presented by the evidence at the hearing.

The petition to rehear is denied.

DROWOTA, C.J., and FONES, COOPER and HARBISON, JJ., concur.