IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 13, 2016


**STATE OF TENNESSEE v. MARCUS TRAVENO COX, JR.**


**Appeal from the Circuit Court for Marshall County**
**No. 2012-CR-174    Forest A. Durard, Jr., Judge**

_____


**No. M2015-00512-CCA-R3-CD – Filed March 31, 2016**
_____


Appellant, Marcus Traveno Cox, Jr., stands convicted (after merger of duplicate counts) of possession with intent to sell less than .5 grams of cocaine, possession with intent to sell more than one-half ounce but less than ten pounds of marijuana, possession of a Schedule III controlled substance (Lortab), possession of drug paraphernalia, and possession of a firearm with intent to go armed during the commission of a dangerous felony.  The trial court sentenced him to an effective sentence of nine years in the Tennessee Department of Correction.  On appeal, appellant argues that the indictment and jury instructions for the possession of a firearm charge were fatally deficient and that he received ineffective assistance of counsel.  Following our review, we affirm the judgments of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, SP. J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

John S. Colley III, Columbia, Tennessee, for the Appellant, Marcus Traveno Cox, Jr..

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert James Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

I.  Facts

At appellant's trial, the State presented evidence that on June 26, 2012, law enforcement officers searched a house on Thomas Street in Lewisburg, Tennessee, pursuant to a search warrant and found a 9mm Hi-Point pistol, 363.7 grams of marijuana, 0.47 grams of crack cocaine, and scales. The officers also found mail, a driver's license, and clothing belonging to appellant. After the search, appellant's mother indicated that the room searched was appellant's room. The search warrant was based on information from a "reliable confidential informant" that the informant had been inside the residence and had seen a large amount of marijuana and scales in appellant's bedroom within twenty-four hours of officers' obtaining the search warrant. Parts of the search warrant affidavit were read into evidence at the insistence of appellant and against his trial counsel's advice.

Appellant, his mother, and his girlfriend each testified that appellant spent his nights at his girlfriend's house and only periodically visited his mother's house. He had only spent one night at his mother's house more than a month before the search. He kept a gun, some clothing, and old mail in the room. However, according to his mother, he received mail at his grandmother's house. He did not have a key to the house and had been prohibited by his mother and brother from entering the house without a key. Appellant testified that he owned the gun found in the room but denied any knowledge of the drugs found therein.

Appellant was convicted of (Count 1) possession with intent to sell less than .5 grams of cocaine; (Count 2) attempted possession with intent to deliver less than .5 grams of cocaine as a lesser-included offense; (Count 3) possession with intent to sell more than one-half ounce but less than ten pounds of marijuana; (Count 4) possession with intent to deliver more than one-half ounce but less than ten pounds of marijuana; (Count 5) possession of a Schedule III controlled substance (Lortab); (Count 6) possession of drug paraphernalia; and (Count 7) possession of a firearm with intent to go armed during the commission of a dangerous felony. The jury unanimously found appellant guilty of possessing the firearm with intent to go armed during the commission of four dangerous felonies, representing Counts One through Four.

The trial court merged Count 2 into Count 1 and Count 4 into Count 3. The trial court sentenced appellant to five years for Count 1; two years for Count 3; eleven months, twenty-nine days for Count 5; eleven months, twenty-nine days for Count 6; and four years for Count 7, with Count 7 to be served consecutively to Count 1 by operation of law. The trial court imposed concurrent sentencing for the remaining convictions.

In appellant's motion for new trial, he raised ineffective assistance of counsel, among other issues. He specifically complained that trial counsel provided ineffective assistance of counsel (1) by failing to "attack" the search warrant prior to trial; (2) by

failing to call the confidential informant to the stand after the informant asserted his right against self-incrimination during a jury-out hearing; (3) by failing to *voir dire* a juror who allegedly saw appellant exiting the jail van; and (4) by not objecting to testimony that appellant placed calls from jail.

At the motion for new trial hearing, trial counsel testified that he did not challenge the search warrant because the defense position was that appellant had no connection to the house and therefore would not have "standing"[1] to make a challenge. He further explained that witnesses who could testify that appellant had an expectation of privacy would be the same witnesses upon whom he intended to rely at trial to testify that appellant was not a resident at the house. Regarding the juror who saw appellant exiting the jail van, trial counsel stated that he did not want to draw attention to the incident by asking for a curative instruction or by questioning the juror further on the matter. He posited that highlighting the incident would have led to the juror's knowing for a certainty that appellant was in custody when the juror originally only had a vague notion that he might have seen appellant from a distance. Trial counsel testified that he did not object to testimony about appellant's making calls from jail because appellant had testified on direct examination about being in custody. Trial counsel believed that objecting to further testimony "would just look like we were trying to hide something." Trial counsel stated that the confidential informant's basis for asserting his Fifth Amendment rights was that the police believed the informant was at the Thomas Street house to talk to someone in the house about "hiding or obfuscating [a] murder." Trial counsel said that appellant initially wanted to challenge the search warrant but later was "on board" with trial counsel's decision not to challenge it. Trial counsel agreed that appellant denied having met with the confidential informant but did not believe that appellant's denial was sufficient basis to challenge the search warrant.

On cross-examination, trial counsel stated his belief that appellant's insistence on submitting the search warrant as an exhibit to the trial led to appellant's being found guilty. He said that the information about the juror's possibly seeing appellant outside the courtroom came from appellant. Trial counsel testified that after appellant's trial, he asked the juror whether the juror had seen appellant and that the juror responded that he had not seen appellant. Trial counsel agreed that appellant mentioned having been in jail several times during his testimony.

---

[1] Throughout the motion for new trial hearing and appellant's briefing, he seems to use "standing" as shorthand for establishing a reasonable expectation of privacy. We note that the United States Supreme Court instructed the bench and bar that while the analysis of a defendant's standing to challenge a search and the analysis of whether a defendant's personal Fourth Amendment rights have been violated are generally the same, "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Rakas v. Illinois*, 439 U.S. 128, 138-39 (1978).

The trial court denied appellant's motion for new trial. Regarding appellant's allegations of ineffective assistance of counsel, the trial court found that any challenge of the search warrant would have been without merit and that trial counsel was thus not ineffective for failing to challenge the warrant. The trial court also found that it would have refused to allow the confidential informant to testify after the informant made it clear that he would only assert his Fifth Amendment right not to testify; accordingly, trial counsel could not be ineffective for failing to pursue the informant's testimony. The trial court found that appellant's other two ineffective assistance of counsel issues, regarding the juror's seeing him exiting the jail van and trial counsel's not objecting to testimony about appellant's being in jail, were without merit because appellant himself mentioned being in jail, unsolicited.

## II. Analysis

Appellant presents two issues for our review. First, he contends that this court should dismiss the indictment or grant him a new trial for his conviction for possession of a firearm with intent to go armed during the commission of a dangerous felony because the indictment did not identify the predicate dangerous felony and because the jury instructions set forth the wrong mens rea element by including "knowingly" and "recklessly" along with "intentionally." Second, he maintains that he received ineffective assistance of counsel at trial.

## A. Possession of a Firearm Conviction

Appellant first raised the issue regarding the alleged insufficiency of the indictment in his motion for new trial and first raised the issue regarding an error in the jury instructions on appeal in his rebuttal brief. Therefore, both issues are waived. *See* Tenn. R. Crim. P. 12(b) (motions alleging a defect in the indictment must be made prior to trial unless the indictment "fails to show jurisdiction in the court or to charge an offense"); Tenn. R. App. P. 3(e) (issues regarding jury instructions must be included in a motion for new trial to avoid waiver on appeal); *State v. Willie Duncan*, No. W2013-02554-CCA-R3-CD, 2014 WL 4243746, at *9 (Tenn. Crim. App. Aug. 27, 2014), *perm. app. granted* (Tenn. Feb. 13, 2015), *argued* (Tenn. Nov. 4, 2015).

## B. Ineffective Assistance of Counsel

Appellant contends that his trial counsel was ineffective for failing to challenge the search warrant, for not having the confidential informant testify at trial, and for not questioning the juror who allegedly saw appellant exiting the jail van. In his motion for new trial, appellant also argued that trial counsel should have objected to testimony that appellant made telephone calls from jail; however, he has not pursued this issue on appeal. Rule 10(b) of the Rules of the Court of Criminal Appeals states, "Issues which

-4-

are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court." Therefore, any issues not raised in appellant's brief are waived.

Initially, we note that this court has repeatedly warned appellants against presenting claims of ineffective assistance of counsel on direct appeal because (1) it may be difficult to establish ineffective assistance without an evidentiary hearing and (2) raising the issue on direct appeal bars appellant from raising the issue in a post-conviction petition. *See State v. Anderson*, 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992); *State v. Thomas D. Taylor*, No. E2011-00500-CCA-R3-CD, 2012 WL 6682014, at *9 (Tenn. Crim. App. Dec. 21, 2012). However, in this case, the first reason for caution has been mitigated because the trial court used the motion for new trial hearing as an evidentiary hearing for appellant's claim of ineffective assistance.

A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The same standard applies when an appellant raises the claim of ineffective assistance of counsel on direct appeal. *State v. Burns*, 6 S.W.3d 453, 461 n.5 (Tenn. 1999) (citing *Anderson,* 835 S.W.2d at 607). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective

assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting Baxter, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Appellant's first argument is that trial counsel provided ineffective assistance by not challenging the search warrant prior to trial. This led to appellant's insisting, against counsel's advice, during trial to introduce the search warrant affidavit as evidence. Appellant contends that the search warrant affidavit was deficient and that appellant had "standing" to challenge the search warrant.

-6-

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." Article I, section 7 of the Tennessee Constitution similarly prohibits unreasonable searches and seizures, and our supreme court has held that this provision is identical in intent and purpose with the Fourth Amendment. *See, e.g., State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000); *State v. Vineyard*, 958 S.W.2d 730, 733 (Tenn. 1997). "The essence of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn.1997) (quoting *Camara v. Mun. Court*, 387 U.S. 523, 528 (1967)). The state and federal constitutional protections "are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen." *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000).

When a defendant seeks to suppress evidence seized pursuant to a search warrant, the burden is on the defendant to prove by a preponderance of the evidence:

> (1) the existence of a legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized; (2) the identity of the items sought to be suppressed; and (3) the existence of a constitutional or statutory defect in the search warrant or the search conducted pursuant to the warrant.

*State v. Henning*, 975 S.W.2d 290, 298 (Tenn. 1998) (citing *State v. Evans*, 815 S.W.2d 503, 505 (Tenn. 1991); *State v. Harmon*, 775 S.W.2d 583, 585-86 (Tenn. 1989)). Tennessee Rule of Criminal Procedure 41(f) requires that the trial court receive evidence on any issue of fact necessary to decide a motion to suppress. *See Evans*, 815 S.W.2d at 505. The trial court is not required to set an evidentiary hearing as a matter of course but must do so only if the motion alleges facts that, if proven, would require the granting of relief. *Id.* "Factual allegations that are general and conclusory, or based upon suspicion and conjecture will not suffice." *Id.*

The United States Supreme Court has held that the "rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968). The focus of the inquiry should be placed "on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Rakas v. Illinois*, 439 U.S. 128, 139 (1978). Thus, in evaluating whether a defendant's Fourth Amendment rights have been violated, we must determine (1)

whether the defendant, by his conduct, has "'exhibited an actual (subjective) expectation of privacy'" and (2) whether the defendant's subjective expectation of privacy is "'one that society is prepared to recognize as reasonable.'" *State v. Ross*, 49 S.W.3d 833, 840 (Tenn. 2001) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). "A defendant has the initial burden of establishing a legitimate expectation of privacy, and the failure to do so is dispositive in favor of the state." *State v. Talley*, 307 S.W.3d 723, 730 (Tenn. 2010). Regarding guests in another person's house, this court has previously stated the following:

> [T]he fact that a person is an overnight guest in a residence or an apartment, standing alone, is sufficient to clothe the guest with a legitimate expectation of privacy in the premises sufficient to challenge the search and any resulting seizure. However, a "casual visitor" or a "transient party guest" does not have a reasonable expectation in the host's residence or apartment.

*State v. Transou*, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996); *see United States v. Dix*, No. 94-4065, 1995 WL 351182, at *2 (6th Cir. June 9, 1995) ("As a casual, albeit frequent, visitor to his sister's apartment, who did not keep clothing there, who did not receive mail there, and who had no key, Dix had no reasonable expectation of privacy in the premises."). In addition, "a defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object, irrespective of other considerations such as actual ownership or possession." *Ross*, 49 S.W.3d at 842.

On appeal, appellant seemingly relies on evidence produced at trial to support his argument that he had a reasonable expectation of privacy in the area searched by the police, specifically that he kept personal property in the room, had lived there in the past, and had visited within two weeks of the search. He did not present any evidence at the motion for new trial hearing that he had a reasonable expectation of privacy in the room. The proof at trial showed that appellant sometimes visited his mother's house but had only spent one night there more than a month before the search. He kept a gun, some clothing, and old mail in the room. However, he received mail at his grandmother's house. He did not have a key to the house and had been prohibited by his mother and brother from entering the house without a key. His girlfriend testified that he always stayed overnight at her house. This evidence tends to show that appellant did not have a reasonable expectation of privacy.

Moreover, trial counsel testified that his strategy at trial was to distance appellant from the items found in his mother's house. He opined that this strategy would have been undermined by the proof necessary to establish a reasonable expectation of privacy for purposes of challenging the search. This court gives deference to matters of trial strategy as long as the strategy is based on informed and adequate representation. *Hellard*

*v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Based on our analysis of appellant's expectation of privacy in his mother's house, we conclude that trial counsel's strategy was valid. Because this strategy amounted to a disclaimer of possessory interest, appellant could not challenge the legality of the search. *See Ross*, 49 S.W.3d at 842. Therefore, we further conclude that appellant's argument in this regard is without merit.

Next, appellant maintains that trial counsel was ineffective for his failure to ensure that at least part of the confidential informant's testimony was heard by the jury and for not pursuing the question of whether the juror saw appellant exiting the jail van. However, appellant did not present the confidential informant's testimony at the motion for new trial hearing. "'As a general rule, this is the only way [appellant] can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of [appellant].'" *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (quoting *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)). Regarding the juror issue, trial counsel testified that after the trial, the juror claimed he had not seen appellant. In addition, trial counsel stated that his decision not to pursue the issue was a matter of strategy. These arguments by appellant have no merit.

## CONCLUSION

Based on the briefs of the parties, the record, and the applicable law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, SPECIAL JUDGE